**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

JANE DOE, a minor, by her parents and next
friends, JOHN DOE and JILL DOE,

                    Plaintiff,

       v.                             No. 2:24-cv-00354-JPS

ELKHORN AREA SCHOOL DISTRICT and
JASON TADLOCK, in his individual capacity,

                   Defendants.

---

**OMNIBUS REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' MOTION TO VACATE PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.   THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR AS TO DEFENDANTS' LIABILITY BECAUSE SEVENTH CIRCUIT PRECEDENT REMAINS CONTROLLING LAW. ............................................................................................ 2

        A.   Defendants' contention that the governing law has "changed," and that this Court should therefore ignore *Whitaker* and *Martinsville*, is meritless. .................. 2

            *1.*   *President Trump's Executive Orders Have No Bearing on this Court's Analysis of Defendants' Liability.* ..................................................................... 2

            *2.*   *The Department of Education's February 4 Dear Colleague Letter Merely Restates the Executive Orders and Has No Bearing on Plaintiff's Case.* ......... 7

            *3.*   *The Supreme Court's Per Curiam Stay Decision in Louisiana v. United States Did Not Overrrule Whitaker and Martinsville Sub Silentio.* ................. 8

        B.   EASD is liable under Title IX and the Equal Protection Clause for denying Jane access to single-sex girls' facilities at school. ................................................ 10

            *1.*   *The Court has considered and rejected EASD's Title IX defenses.* ................ 10

            *2.*   *The Court Has Also Considered and Rejected Defendants' Equal Protection Clause Defenses.* ................................................................................. 12

        C.   Defendant Tadlock is also individually liable because he was directly and personally involved in the violation of Jane Doe's rights ...................................... 17

    II.  THERE IS NO VALID LEGAL OR FACTUAL BASIS TO VACATE THE PRELIMINARY INJUNCTION, WHICH WOULD ONLY SUBJECT PLAINTIFF TO IRREPARABLE HARM. .......... 19

        A.   The Court need not, and should not, decide the Motion to Vacate before ruling on Plaintiffs' motion for partial summary judgment. ............................................. 20

        B.   In evaluating the Motion to Vacate, the Court should weigh the same factors it did when granting the preliminary injunction. ...................................................... 21

            *1.*   *Jane's Likelihood of Success on the Merits Has Not Changed* ...................... 22

            *2.*   *Jane will suffer needless irreparable harm if the preliminary injunction is vacated and she is banned from using girls' restrooms again.* ....................... 23

            *3.*   *Defendants have suffered no harm from the injunction and face no harm from Jane's continued use of girls' restrooms moving forward.* .................... 24

            *4.*   *The balance of equities remains solidly in Plaintiff's favor* ........................... 25

CONCLUSION ................................................................................................................... 26

i

# TABLE OF AUTHORITIES

**CASES**

*A.C. v. Metropolitan School District of Martinsville*,
75 F.4th 760 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 683 (2024) ............................. 1, 5, 9, 11

*Adams ex rel. Kasper v. School Board of St. Johns County*,
57 F.4th 791 (11th Cir. 2022) (en banc) .................................................. 11

*American Hospital Supply Corp. v. Hospital Products Ltd.*,
780 F.2d 589 (7th Cir. 1986) ............................................................... 21

*Biondo v. City of Chicago*,
382 F.3d 680 (7th Cir. 2004) ............................................................... 22

*Buchanan-Moore v. County of Milwaukee*,
570 F.3d 824 (7th Cir. 2009) ............................................................... 17

*Cary v. Curtis*,
44 U.S. 236 (1845) (Story, J., dissenting) ................................................ 4

*Centurion Reinsurance Co. v. Singer*,
810 F.2d 140 (7th Cir. 1987) ............................................................... 21

*Chamber of Commerce v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) ............................................................... 3

*Christensen v. Harris County*,
529 U.S. 576 (2000) ............................................................................ 5

*Clinton v. City of New York*,
524 U.S. 417, 438 (1998) ...................................................................... 3

*Commodity Futures Trading Commission v. Battoo*,
790 F.3d 748 (7th Cir. 2015) ............................................................... 20

*Corpeno-Argueta v. United States*,
341 F. Supp. 3d 856 (N.D. Ill. 2018) ..................................................... 9

*Courthouse News Service v. Brown*,
908 F.3d 1063 (7th Cir. 2018) ............................................................. 21

*Department of Education v. Louisiana*,
603 U.S. 866 (2024) ............................................................................ 8

*Dietz v. Bouldin*,
579 U.S. 40 (2016) ............................................................................. 20

Case 2:24-cv-00354-JPS    Filed 03/13/25    Page 3 of 32    Document 65

*Doe v. Boyertown Area School District,*
    897 F.3d 518 (3d Cir. 2018)...................................................................... 14

*Dugas v. Jefferson County,*
    931 F. Supp. 1315 (E.D. Tex. 1996) ........................................................ 18

*Eppley v. Iacovelli,*
    No. 1:09-cv-386, 2010 U.S. Dist. LEXIS 85151 (S.D. Ind. Aug. 17, 2010) ......................... 20

*Flack v. Wisconsin Department of Health Services,*
    395 F. Supp. 3d 1001 (W.D. Wis. 2019) ................................................. 13

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America Inc.,*
    549 F.3d 1079 (7th Cir. 2008) ................................................................. 23

*Gloucester County School Board v. Grimm,*
    141 S. Ct. 2878 (2021) ............................................................................... 9

*Grimm v. Gloucester County School Board,*
    972 F.3d 586 (4th Cir. 2020) ............................................................ 11, 13

*Hart v. Wal-Mart Stores, Inc.,*
    360 F.3d 674 (7th Cir. 2004) ................................................................... 11

*Hecox v. Little,*
    104 F.4th 1061 (9th Cir. 2024) ............................................................... 13

*Immigration & Naturalization Service v. Chadha,*
    462 U.S. 919 (1983) ..................................................................................... 3

*J.A.W. v. Evansville Vanderburgh School Corporation,*
    396 F. Supp. 3d 833 (S.D. Ind. 2019) .................................................... 12

*J.E.B. v. Alabama ex rel. T.B.,*
    511 U.S. 127 (1994) ................................................................................... 13

*Jackson v. Birmingham Board of Education,*
    544 U.S. 167, 175 (2005) ......................................................................... 12

*K.C. v. Individual Members of Med. Licensing Bd.,*
    121 F.4th 604 (7th Cir. 2024) ................................................................. 13

*Kadel v. Folwell,*
    100 F.4th 122 (4th Cir. 2024), *pet. for cert. filed*, No. 24-99 (July 26, 2024)......................... 6

*Kisor v. Wilkie,*
    588 U.S. 558 (2019)............................................................................. 3, 5

*Kyle v. Holinka*,
No. 09-cv-90, 2009 U.S. Dist. LEXIS 54574 (W.D. Wis. June 26, 2009) ............................ 18

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) .................................................................................................. 6

*Metropolitan School District of Martinsville v. A.C.*,
144 S. Ct. 683 (2024) ................................................................................................ 9

*Olson v. Paine, Webber, Jackson & Curtis, Inc.*,
806 F.2d 731 (7th Cir. 1986) ...................................................................................... 9

*Parents for Privacy v. Barr*,
949 F.3d 1210 (9th Cir. 2020) .................................................................................. 15

*Perez v. Mortgage Bankers Association*,
576 U.S. 92 (2015) .................................................................................................... 5

*PFLAG, Inc. v. Trump*,
No. 25-cv-337, 2025 U.S. Dist. LEXIS 38036 (D. Md. Mar. 4, 2025) ........................... 3, 5, 6

*Ritchie v. Coldwater Community Schools*,
947 F. Supp. 2d 791 (W.D. Mich. 2013) .................................................................... 18

*Tirrell v. Edelblut*,
No. 24-cv-251, 2024 U.S. Dist. LEXIS 162185 (D.N.H. Sept. 10, 2024) .......................... 8

*United States v. Virginia*,
518 U.S. 515 (1996) .................................................................................................. 15

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008) .................................................................................................... 21

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) .................................................................................................. 3

**STATUTES**

5 U.S.C. § 7301 ........................................................................................................ 6

**OTHER AUTHORITIES**

The Federalist No. 47 (James Madison) ........................................................................ 4

**REGULATIONS**

34 C.F.R. § 106.30 .................................................................................................... 8

iv

U.S. Department of Education, Office for Civil Rights, Final Rule, *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,572 (May 19, 2020) ...................................................................... 8

**EXECUTIVE ORDERS**

Exec. Order 14190, Ending Radical Indoctrination in K-12 Schooling,
90 Fed. Reg. 8,853 (Feb. 3, 2025) ...................................................................... 3, 4, 5

Exec. Order 14201, Keeping Men Out of Women's Sports,
90 Fed. Reg. 9,279 (Feb. 11, 2025) ...................................................................... 3, 4, 5

Exec. Order No. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government,
90 Fed. Reg. 8,615 (Jan. 30, 2025) ...................................................................... 3, 4, 5

## INTRODUCTION

Plaintiff Jane Doe respectfully submits this omnibus memorandum of law in reply to the Brief in Opposition to Plaintiff's Motion for Summary Judgment [ECF No. 60], and Motion to Vacate Preliminary Injunction [ECF No. 61], filed by Defendants Elkhorn Area School District ("EASD") and its superintendent, Jason Tadlock ("Tadlock") (collectively, "Defendants").

Plaintiffs' Motion for Partial Summary Judgment presents two straightforward questions: (1) Did EASD violate Title IX by denying Plaintiff Jane Doe, a transgender girl, access to single-sex girls' facilities at school?, and (2) Does Defendants' enforcement of an undisputed policy prohibiting Jane and all other transgender students from sex-specific facilities matching their gender identities violate the Fourteenth Amendment's Equal Protection Clause? Under controlling Seventh Circuit precedent, the answer to both questions is "yes." *See Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046-55 (7th Cir. 2017); *A.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 771-74 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 683 (2024).

Defendants concede that this Court has already considered and rejected most of their arguments. *See* Defs.' Opp'n Br., ECF No. 60 ("Opposition Brief"), at 2 n.1. Defendants nevertheless attempt to muddy the waters by claiming, implausibly and incorrectly, that President Trump "changed" Title IX and the Fourteenth Amendment through several recent executive orders, *see* ECF No. 60 at 9, and then asking this Court to defy the Seventh Circuit and find that these laws offer no protection to Jane or other transgender students. *Id*. Based on these same flawed arguments, Defendants separately move to vacate the preliminary injunction entered by this Court on August 1, 2024. Defs' Mot. to Vacate Prelim. Inj., ECF No. 61 ("Motion to Vacate").

The Court should reject Defendants' requests, grant partial summary judgment to Jane on Defendants' liability under Title IX and the Equal Protection Clause, and deny the Motion to Vacate.

1

**ARGUMENT**

I.  **THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR AS TO DEFENDANTS' LIABILITY BECAUSE SEVENTH CIRCUIT PRECEDENT REMAINS CONTROLLING LAW.**

This Court has already found that, under *Whitaker* and *Martinsville*, Plaintiff was highly likely to succeed on the merits of her Title IX and Equal Protection Clause claims against EASD. Op. & Order ("Preliminary Injunction Opinion"), ECF No. 49, at 23. With no intervening change in the governing case law—and no genuine dispute of the relevant material facts then or now— this Court can and should now find that EASD, by denying Plaintiff Jane Doe access to girls' facilities at school because she is transgender, has violated Title IX and the Equal Protection Clause. Based on this same authority, the Court can further hold that Defendant Jason Tadlock, who as EASD's superintendent was instrumental in developing and implementing EASD's policies and practices regarding the treatment of transgender students, is individually liable under Section 1983 for violating Jane's rights under the Equal Protection Clause.

A.  **Defendants' contention that the governing law has "changed," and that this Court should therefore ignore *Whitaker* and *Martinsville*, is meritless.**

1.  *President Trump's Executive Orders Have No Bearing on this Court's Analysis of Defendants' Liability.*

In opposing Plaintiffs' motion for partial summary judgment, Defendants assert only one new, and patently absurd, argument: that three of President Trump's recent executive orders[1] (the "Executive Orders") somehow both amended Title IX and the Constitution, thereby permitting this

---

[1] The three executive orders are (1) Exec. Order No. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8,615 (Jan. 30, 2025) (the "Gender Order"); (2) Exec. Order 14190, Ending Radical Indoctrination in K-12 Schooling, 90 Fed. Reg. 8,853 (Feb. 3, 2025) (the "K-12 School Order"); and (3) Exec. Order 14201, Keeping Men Out of Women's Sports, 90 Fed. Reg. 9,279 (Feb. 11, 2025) (the "Sports Order") (collectively, the "Executive Orders").

Court to ignore controlling Seventh Circuit precedent and rule in Defendants' favor on all claims. *See* ECF No. 60 at 2-13. Referring to Title IX, Defendants make the astonishing assertion that, when President Trump signed the Gender Order on January 20, 2025, "the law itself changed," such that "[the Seventh Circuit's] interpretation of Title IX is of no import." ECF No. 60 at 9. More egregiously, Defendants then argue that President Trump's "clarification of the term sex throughout Federal law" announced in the Gender Order (but, to be clear, *not* codified in Title IX or any other statute) demands that "Plaintiff's equal protection clause claim fails and should be dismissed." *Id.* at 25.

Defendants are flat wrong: the law has not changed and the Seventh Circuit's decisions in *Whitaker* and *Martinsville* still control on Plaintiff's Title IX and Equal Protection Clause claims.

First, under our system of laws, no President has the authority to rewrite statutes—never mind the Constitution—by executive order. *See Clinton v. City of New York*, 524 U.S. 417, 438 (1998) ("There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes."). Amending a statute is exclusively within Congress' Article I powers. *See id.*; *Immigr. & Naturalization Serv. v. Chadha*, 462 U.S. 919, 954 (1983) ("[R]epeal of statutes, no less than enactment, must conform with Art. I."). "In the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952); *see also PFLAG, Inc. v. Trump*, No. 25-cv-337, 2025 U.S. Dist. LEXIS 38036, at *61 (D. Md. Mar. 4, 2025) (quoting same). Accordingly, if a court finds that an executive order conflicts with a statute, the executive order must fall. *See Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996). It is the role of federal courts, not the President, to issue controlling interpretations of federal statutes and the Constitution. *See Kisor v. Wilkie*, 588 U.S. 558, 616 n.91 (2019) ("[I]f the 'right

to interpret the laws' is taken away from courts and 'confided to an executive functionary,' then 'the judicial power, designed by the Constitution to be the final and appellate jurisdiction to interpret our laws, is superseded in its most vital and important functions.'") (quoting *Cary v. Curtis*, 44 U.S. 236, 253, 257 (1845) (Story, J., dissenting)); *accord* The Federalist No. 47 (James Madison) ("The accumulation of all powers, legislative, executive, and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny.").

Second, the Executive Orders themselves do not purport to sweep as broadly as Defendants suggest. President Trump has not purported to bind courts to his interpretation of Title IX as reflected in the Executive Orders—nor could he. Rather, he has directed Executive Branch agencies and employees to enforce Title IX consistent with his interpretation of that statute: All three Executive Orders announce statements of Trump Administration policy and direct Executive Branch agencies to act in accordance with that policy. *See* Gender Order §§ 2, 3, 4, 5, 6; K-12 Schooling Order § 3(a) (directing the Secretary of Education and other federal officials, "[w]ithin 90 days of the date of this order, to advise the President in formulating *future* policy . . . containing recommendations and a plan" for "[e]nding [i]ndoctrination," including through federal funding mechanisms and potential litigation) (emphasis added); Sports Order § 3 (directing Secretary of Education and other officials to take actions consistent with order). Thus, by their own terms, the orders *only* bind Executive Branch agencies and employees; they cannot and do not amend statutes or interfere with federal courts' interpretations of those statutes. Notably, the Gender Order tacitly recognizes that the President lacks the authority to amend existing statutes to reflect his preferred definitions of "sex" and other policy preferences. Gender Order § 6 (directing a White House official to draft "proposed bill text to codify the definitions in this order" to send to Congress for consideration). To Plaintiff's knowledge, no such bill has been sent to or introduced by Congress.

4

All of the Executive Orders note the truism that "[t]his order shall be implemented consistent with applicable law . . . ." Gender Order § 8(c); K-12 School Order § 6(b); Sports Order § 5(b). While federal courts are currently divided on how Title IX and the Equal Protection Clause apply to transgender students, the Seventh Circuit has spoken unambiguously on the questions presented in this case and has already turned down one opportunity "to jump from one side of the circuit split to the other." *Martinsville*, 75 F.4th at 771. To the extent the applicable law conflicts, it is the law (here, Title IX's statutory protections and the Equal Protection Clause, as interpreted by the Seventh Circuit in *Whitaker* and *Martinsville*), not an executive order or agency guidance interpreting the law, that carries the day. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (holding that subregulatory guidance, such as Dear Colleague Letters, policy statements, and enforcement guidelines lack the force and effect of law); *Kisor*, 588 U.S. at 584 (same for interpretive rules) (citing *Perez v. Mortg. Bankers Ass'n*, 576 U.S. 92, 97 (2015)); *PFLAG*, 2025 U.S. Dist. LEXIS 38036, at *64-66.

The *PFLAG* court's reasoning in enjoining parts of the Gender Order, as applied to federal funding for health care institutions that provide transition-related health care for transgender minors, is particularly instructive. There, plaintiffs challenged the Gender Order and other executive orders directing federal agencies to revoke funding from all health care institutions that "promote[] gender ideology or provide [the referenced] treatments." *Id.* at *8-9. As here, the relevant executive orders all purported to be issued under President Trump's constitutional authority and directed agencies to implement the President's policy to the extent permitted by law. *Id.* at *9. The court noted that the statutory authority cited as the basis for the Gender Order, 5 U.S.C. § 7301, only authorizes the President to "prescribe regulations for the conduct of employees in the executive branch," *id.* at *41 n.29, not to rewrite federal statutes. The court

further observed that "[i]t is . . . well established that the President may not usurp Congress's power just because the administration of healthcare at issue is antithetical to the President's policies." *Id.* at \*63. As here, the executive orders at issue in *PFLAG* conflicted with another Spending Clause civil rights statute, Section 1557 of the Affordable Care Act, as interpreted by the Fourth Circuit in *Kadel v. Folwell*, 100 F.4th 122, 163-64 (4th Cir. 2024), *pet. for cert. filed*, No. 24-99 (July 26, 2024). Noting its "authority to determine whether the Executive Orders are incompatible with the will of Congress," *id.* at \*65 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024)), and acknowledging that *Kadel* was binding, the court concluded that it "is constrained to conclude the Executive Orders are indeed incompatible with the will of Congress," *id.* at \*65-66.

Although the question of the Executive Orders' legality is not squarely presented here—and need not be decided by the Court to resolve Plaintiff's summary judgment motion—the *PFLAG* court's analysis underscores that, where binding circuit authority conflicts with an executive order, the case law takes precedence. It is the Seventh Circuit's decisions in *Whitaker* and *Martinsville*, not the Executive Orders, that supply this Court with the applicable Title IX and Equal Protection Clause standards to adjudicate Plaintiff's claims here.[2]

---

[2] Since the governing law has not changed, the Court need not entertain Defendants' request to make the purported "change" retroactive to deny all damages and injunctive relief to Plaintiff. ECF No. 60 at 14. Just as the President does not have the authority to bind this Court through executive order prospectively, *see supra* 3-4, there is no credible argument that the President has the power to go back in time to override the Seventh Circuit's interpretation of Title IX and the Equal Protection Clause. No cases cited by Defendants say otherwise. Moreover, Defendants new retroactivity argument conflicts with their own position (which Plaintiff disputes) stated in the parties' Joint and Disputed Proposed Jury Instructions that the Gender Order only applies to "any [Title IX] claim arising on or after January 20, 2025." ECF No. 59 at 2, 4, 5.

Defendants further imply that the U.S. Department of Education's February 4, 2025, "Dear Colleague Letter" from Acting Assistant Secretary for Civil Rights Craig Trainor, supports their view that the Executive Orders "changed" Title IX and that the Trump Administration's interpretation of Title IX contained in those orders effectively amended the statute. Not so. To the contrary, the Dear Colleague Letter merely memorializes (1) that the Department of Education's 2024 Title IX Rule has been enjoined by some courts (which was true at the time of this Court's preliminary injunction order), and (2) that "ED and OCR must enforce Title IX consistent with President Trump's [Gender] Order." Dear Colleague Letter at 1. The letter reflects an appropriately cabined reading of the Executive Orders—that they can only bind Executive Branch agencies and employees, not courts or other parties. Nothing in the letter supports Defendants' more expansive (and incorrect) view that the Executive Orders "changed" Title IX and therefore compels courts to accept the President's interpretation of that statute.

The Dear Colleague Letter further explains that the Department "will enforce Title IX under the provisions of the 2020 Title IX Rule, rather than the 2024 Title IX Rule." *Id.* at 1. The 2020 Title IX Rule, though, does not define "sex" or "on the basis of sex" at all, and is otherwise silent about its application to transgender students. *See* U.S. Dep't of Educ., Off. for Civ. Rts., Final Rule, *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,572, 30,574 (May 19, 2020) (codified at 34 C.F.R. § 106.30). It also bears noting that the 2020 Title IX Rule was also the operative rule in effect when the Seventh Circuit decided *Martinsville* in 2023, and did not factor into the court's analysis one way or the other. The Department's announcement that it will continue to enforce the 2020 Title IX Rule, without more, does not undermine Plaintiff's Title IX claims in any way.

7

*3. The Supreme Court's Per Curiam Stay Decision in Louisiana v. United States Did Not Overrrule Whitaker and Martinsville Sub Silentio.*

In an argument not raised by Defendants, the Empowered Community Coalition (the "Coalition"), in its proposed amicus brief [ECF 63-1], separately asserts that the Supreme Court's per curiam decision in decision in *Department of Education v. Louisiana*, 603 U.S. 866, 868 (2024), on an emergency motion for a stay in a challenge to the 2024 Title IX Rule, "fatally undermined" *Whitaker* and *Martinsville*, such that they are no longer binding on this Court. *See* ECF No. 63-1 at 3-7. They are wrong.

The *Louisiana* decision did not explicitly or implicitly overrule or abrogate *Whitaker* or *Martinsville*. In *Louisiana*, the plaintiff states challenged portions of the 2024 Title IX Rule addressing gender identity discrimination. *Louisiana*, 603 U.S. at 867. The district court in Louisiana had held that those provisions were inconsistent with Title IX and, rather than just enjoining those provisions, enjoined the entire 2024 Title IX Rule. *Id.* at 866. The central issue before the Court on the stay proceeding was whether the district court's decision to enjoin the entire rule was overbroad and whether the injunction should be stayed, in part, as to aspects of the rule that the plaintiff states had not challenged. *Id.* at 868. In dicta, the majority noted that all nine members of the Court agreed that the injunction as to the challenged provisions was appropriate. *Id.* at 867. But neither the majority nor the dissent explained the nature of this agreement— including whether it was on the merits or in consideration of other preliminary injunction factors— and thus offers little insight into how the Court might ultimately rule on whether and to what extent Title IX protects transgender students from discrimination. *See Tirrell v. Edelblut*, No. 24-cv-251, 2024 U.S. Dist. LEXIS 162185, at *48 (D.N.H. Sept. 10, 2024).

A lower court may not presume that a higher court's decision will be overruled without "certain[ty] or almost certain[ty]" that it will be when the issue is next presented. *Olson v. Paine,*

*Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 741 (7th Cir. 1986) (citations omitted). "This is a high standard and will rarely be met." *Id.* "The Court has to be 'almost certain that the higher court would repudiate the doctrine if given the chance to do so' before it can disregard a higher court's precedent." *Corpeno-Argueta v. United States*, 341 F. Supp. 3d 856, 863 (N.D. Ill. 2018) (quoting *Olson*, 806 F.2d at 734)).

This high standard cannot be met here. For starters, the Seventh Circuit has already declined to revisit *Whitaker* once. *See Martinsville*, 75 F.4th at 771. The Supreme Court itself, on two different occasions (including in *Martinsville* just a year ago), has declined to review factually and legally analogous cases in which the Seventh and Fourth Circuits ruled in favor of the transgender student plaintiffs. *Gloucester Cnty. Sch. Bd. v. Grimm*, 141 S. Ct. 2878 (2021) (denying certiorari and noting that only two justices would have granted the petition); *Metro. Sch. Dist. of Martinsville v. A.C.*, 144 S. Ct. 683 (2024) (denying certiorari with no noted dissents). Nor, in its current term, has the Supreme Court granted certiorari in any case presenting the questions at issue here—whether Title IX and the Equal Protection Clause prohibit schools from denying transgender students access to single-sex facilities matching their gender identities—so no change in governing Supreme Court case law is imminent. In its preliminary injunction order, the Court was "far from powerfully convinced" that "the [Seventh Circuit] would overrule [these cases] at the first opportunity," ECF No. 49 at 32, and there is nothing to warrant a different conclusion now.

### ###

For the reasons stated above, *Whitaker* and *Martinsville* remain good law in this circuit and, for the reasons this Court previously found, are controlling here. The arguments to the contrary advanced by Defendants and the amicus Coalition are meritless and should be rejected.

**B.    EASD is liable under Title IX and the Equal Protection Clause for denying Jane access to single-sex girls' facilities at school.**

In their opposition brief, Defendants tacitly admit that, if the Court follows *Whitaker*, *Martinsville*, and its reasoning in the Preliminary Injunction Decision, it will find EASD liable under Title IX. ECF No. 60 at 2. Defendants also concede that this Court has already "rejected many of the arguments" raised in their opposition brief in its preliminary injunction order and that they are recycling those failed arguments now to preserve them for appeal. *Id.* at 2 n.1. The Court's prior order granting a preliminary injunction squarely addressed each of the previously presented arguments and found them meritless under binding Seventh Circuit law. ECF No. 49 at 23-41. Defendants have copied-and-pasted verbatim large swaths of these prior arguments, with only minor additions. *Compare* ECF No. 31 at 7-23 *with* ECF No. 60 at 15-29. For the reasons explained below, these changes do not warrant departure from the Court's prior conclusions. The Court should grant summary judgment to Plaintiff on EASD's liability under Title IX and the Equal Protection Clause.

*1.    The Court has considered and rejected EASD's Title IX defenses.*

As to Title IX, the Court has already disposed of the primary three arguments raised by Defendants in its preliminary injunction decision. Specifically, the Court rejected Defendants' arguments that (1) the Spending Clause and "clear statement rule" undermines controlling Seventh Circuit precedent, *see* ECF No. 49 at 31-33; (2) a medical diagnosis of gender dysphoria is required before Title IX protections for transgender students apply, *see id.* at 28-29; and (3) offering gender-neutral alternatives for transgender students avoids liability under Title IX, *see id.* at 29-31. Given no intervening changes in the law, the Court should reiterate its earlier holdings and reject these arguments again.

Attempting a second bite at the apple on their Spending Clause argument, Defendants newly assert that recent out-of-circuit decisions enjoining the 2024 Title IX Rule compel the Court to reach a different result. ECF No. 60 at 20-21. But those decisions neither supersede the controlling Seventh Circuit authority, nor negate the fact that Defendants were on notice of that authority for years prior. *See* Joint Statement of Agreed Facts, ECF No. 58, at 6-7.

As this Court previously recognized, out-of-circuit opinions enjoining the 2024 Title IX Rule bear no weight on the Seventh Circuit. *See* ECF No. 49 at 35 (rejecting Defendants' invitation to adopt reasoning of one such preliminary injunction "on the simple basis that the reasoning . . . is contrary to the Seventh Circuit's decisions in *Whitaker* and *A.C.*"). "[A]bsent a change in the state of the law, it would generally be an abuse of discretion for a district court to follow out-of-circuit precedent which conflicts with binding precedent from its own circuit." *Hart v. Wal-Mart Stores, Inc.*, 360 F.3d 674, 680 (7th Cir. 2004). That is especially true where the Seventh Circuit has already made clear that it will not simply "jump from one side of the circuit split to the other" on this issue. *Martinsville*, 75 F.4th at 771 (comparing *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020) *with Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) (en banc)). There is nothing new in the cited opinions to suggest that the Seventh Circuit would change its decision to stay the course.

Furthermore, as Plaintiff argued in her preliminary injunction briefs, Defendants' Spending Clause defense, even if it had merit, would only apply to Plaintiff's claims for damages under Title IX and not to her claims for declaratory or injunctive relief. *See* Pl.'s Prelim. Inj. Reply Br., ECF No. 38, at 10-11. Even if the Spending Clause argument were relevant on this motion for partial summary judgment on liability, which it is not, the Supreme Court instructed in *Jackson v. Birmingham Board of Education* that the requisite notice to school districts is that they cannot

discriminate on the basis of sex. 544 U.S. 167, 175 (2005) ("Congress did not list *any* specific discriminatory practices" barred by Title IX and thus "gave the statute a broad reach" meant to "cover[] a wide range of intentional unequal treatment."); *see also J.A.W. v. Evansville Vanderburgh Sch. Corp.,* 396 F. Supp. 3d 833, 843 (S.D. Ind. 2019).

But even if the Spending Clause required specific notice that discrimination against transgender students might violate Title IX, as this Court previously concluded, "*Whitaker* alone should have provided the requisite notice to the school district," and "the fact that the EASD agreed to comply with *Whitaker* and Title IX for years—including by training its employees and administrators on the same—suggests that it 'cannot now avoid the obligations to which it previously agreed . . . .'" ECF No. 49 at 33. The full record now confirms that EASD and its administrators were aware of and received training on *Whitaker* and its progeny, ECF No. 58 at 6-7, 10-11, that EASD adopted written policies facially consistent with *Whitaker*'s interpretation of Title IX, *id.* at 4-5, that EASD administrators and personnel were aware that they risked violating Title IX if it were to exclude transgender students from sex-specific facilities, *id.* at 5, 9-10, 11, and that EASD has continuously accepted federal funding every year since *Whitaker*. *Id.* at 2, 9.

For these reasons, Defendants' rehashed Spending Clause argument again fails.

### 2. The Court Has Also Considered and Rejected Defendants' Equal Protection Clause Defenses.

As to Plaintiff's Equal Protection Clause claim, Defendants recycled arguments fare no better at this juncture. As this Court already concluded, based upon clear and controlling authority, heightened scrutiny applies. ECF No. 49 at 36-37. Defendants argue that the so-called "clarification" in the Executive Orders that "the United States only recognizes two sexes, male and female" makes it such that the policy no longer results in differential treatment between similarly situated classes. ECF No. 60 at 24.

The Gender Order's definition of "sex" is irrelevant to Plaintiff's constitutional claims. Even assuming *arguendo* that the Order's definition of sex did apply, heightened scrutiny regardless applies where a policy "unquestionably separates the sexes into two groups," *see K.C. v. Individual Members of Med. Licensing Bd.*, 121 F.4th 604, 617 (7th Cir. 2024) (applying rational basis review to a medical care ban while reaffirming *Whitaker*'s holding that a restroom ban that "assign[s] a bathroom based on a child's sex" "unquestionably" classifies based on sex), or where the classification was based on sex stereotypes. *Whitaker*, 858 F.3d at 1051 (citing *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 138 (1994)). EASD's single-sex facilities policy separates students, based upon their sex assigned at birth, to facilities designated for boys or girls. Unquestionably, this is a policy of differential treatment between the sexes, regardless of a binary definition of sex. Heightened scrutiny thus applies.[3]

Next, in line with their previous approach, Defendants primarily argue that the "important governmental objective" for their policy is the protection of student privacy, and that their policy is adequately tailored to satisfy this purpose. Even assuming that EASD was genuinely motivated by student privacy concerns when it adopted the policy, this Court has already found that, with respect to restrooms, less restrictive alternatives are available to address those concerns in a way that does not infringe on transgender students' rights. *See* ECF No. 49 at 39-41.

---

[3] Other courts have held that intermediate scrutiny also applies to gender identity discrimination claims because transgender people, as a group, are a quasi-suspect class. *See Grimm*, 972 F.3d at 610-613; *Hecox v. Little*, 104 F.4th 1061, 1079 (9th Cir. 2024). Plaintiff has not briefed that separate theory because, as *Whitaker* instructs, she is entitled to intermediate scrutiny based on her sex discrimination claims alone. *See Whitaker*, 858 F.3d at 1051; *accord Flack v. Wis. Dep't of Health Servs.*, 395 F. Supp. 3d 1001, 1020 n.26 (W.D. Wis. 2019) (declining to reach question of "whether transgender status is a suspect or quasi-suspect class" and applying heightened scrutiny to the challenged policy as a sex-based classification").

For their part, Defendants concede that the concerns surrounding student privacy in restrooms "are somewhat mitigated by the use of individual stalls." ECF No. 60 at 28; *accord Whitaker*, 858 F.3d at 1052. As this Court found, reasonably available nondiscriminatory alternatives to addressing privacy concerns also include installing privacy strips between restroom stall door, allowing any student who desires more privacy to use the private single-occupancy restrooms, or taking disciplinary action against any student who behaves inappropriately in single-sex facilities. ECF No. 49 at 40-41. Following the preliminary injunction order, EASD did, in fact, install privacy strips in the middle school girls' bathrooms. ECF No. 58 at 3. And, unlike before, Jane's actual experience using girls' restrooms since September without issue, *id.* at 16, provides concrete, undisputed evidence that barring Jane from girls' restrooms because she is transgender was unnecessary to advance the privacy interests EASD asserts.

Defendants argue that the same analysis does not apply to sex-specific school locker rooms. ECF No. 60 at 28. This again ignores that there are less restrictive alternatives available to ensure student privacy. Any student can seek private accommodations from shared changing facilities for any reason, and students are also permitted to utilize individual stalls within the locker rooms to avoid bodily exposure. ECF No. 58 at 3; *see also* ECF No. 49 at 40 (noting that cisgender students may also use gender-neutral restrooms and "[a]ny argument that this is not a reasonable nondiscriminatory alternative for these students serves only to bolster Plaintiff's claim that it is not a reasonable nondiscriminatory alternative for her"). When Jane starts high school next year, there are even more options for EASD to provide enhanced privacy options for all students. ECF No. 58 at 16. Thus, allowing Jane and other transgender students to access locker rooms does not "require" any student to "disrobe" in the presence of other students. *See Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 531 (3d Cir. 2018). Moreover, simply being required to "share restrooms

and locker rooms with transgender students" does not, in and of itself, infringe upon other students' privacy rights. *Parents for Privacy v. Barr*, 949 F.3d 1210, 1217 (9th Cir. 2020); *see also Whitaker*, 858 F.3d at 1052 ("A transgender student's presence in the restroom provides no more of a risk to other students' privacy rights than the presence of an overly curious student of the same biological sex who decides to sneak glances at his or her classmates performing their bodily functions.").

As this Court previously found, EASD can apply uniform discipline policies for any student's misbehavior in a single-sex facility. Furthermore, if EASD wished, it could establish a policy that no student is permitted to fully disrobe in front of other students, require all students to change within individual stalls, or create more private changing spaces for any student who wants to use them. In short, reasonable nondiscriminatory alternatives are available that would allow EASD to address student privacy interests without barring Jane and other transgender students from single-sex facilities.

The Coalition's proposed amicus brief does not shore up Defendants' purported privacy justification. ECF No. 63-1 at 7-11. First, Defendants already stipulated, in the joint statement of undisputed facts, ECF No. 58, to all of the facts that they agreed were material to the resolution of this motion. *See* Pretrial Procedures Order for Civil Cases Pending Before U.S. District Judge J. P Stadtmueller, ECF No. 5 at 9 (in considering a motion for summary judgment, "the Court will only consider the single, agreed-upon statement of facts" submitted by the parties). The Coalition's effort to manufacture factual disputes where none exist is inappropriate at this juncture.

However, even if the Court does consider these declarations, they are immaterial to the constitutional analysis, which considers Defendants' actual aims when it adopted this policy. *See Whitaker*, 858 F.3d at 1050 (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)). Furthermore, only two of the declarations attached to the proposed amicus brief are from parents

whose children are still enrolled at EASD. Decl. of B.P., ECF No. 63-2; Decl. of T.S., ECF No. 63-5). The present concerns of this small group of parents cannot explain or bolster Defendants' rationale in adopting such a decision and policy.[4] Nor does their addition of "safety" concerns which Defendants have never previously purported to have considered as a reason for the policy. Instead, the only rationale that should be considered is what has been proffered directly by Defendants as the motivating factor for their decision, which the Court has already found unpersuasive. *See* ECF No. 49 at 39-41.

Defendants' final argument is that compliance with the Executive Orders offers a new "important governmental objective." However, for the reasons discussed above, the Executive Orders neither apply to Defendants, nor do they vitiate binding Seventh Circuit precedent. *See supra* 4-7. Any future enforcement action by the Department of Education against EASD for permitting transgender students to use sex-specific facilities (whether under order of this Court or otherwise) is, at best, speculative. For the reasons explained above, any such enforcement action would likely conflict with the law of this circuit and therefore be unlawful and subject to challenge by EASD in court. *See supra* 4-7. Accordingly, this is not a persuasive justification to survive heightened scrutiny in this case.

###

---

[4] The Coalition's emphasis on an alleged incident in the Sun Prairie Area School District is similarly misplaced because there is no indication in the record that EASD knew about or even considered this alleged incident in adopting its policy. Moreover, the Sun Prairie school district has publicly stated that media accounts about this incident, prompted by a letter from the Wisconsin Institute for Law and Liberty (counsel for the Coalition here) "are ill-informed, inaccurate, and incomplete." *See Supporting All Students*, Sun Prairie Area Sch. Dist., https://www.sunprairieschools.org/district/equity/supporting-all-students (last accessed Mar. 12, 2025) [https://perma.cc/EKJ5-CMAV]. No conclusions can or need be drawn from the threadbare, unsubstantiated allegations about a two-year old incident in another school district.

Accordingly, for the reasons stated above, in Plaintiff's opening brief, and in this Court's prior order, Defendant EASD is liable under Title IX and the Equal Protection Clause for violating Jane's rights in light of the undisputed facts. At the minimum, if the Court believes there are factual disputes, summary judgment should not be granted in Defendants' favor.

## C. Defendant Tadlock is also individually liable because he was directly and personally involved in the violation of Jane Doe's rights

Defendants argue that Defendant Tadlock is not individually liable because as superintendent, he answers to the Elkhorn Area School District Board of Education (the "Board") and lacks the authority "to deviate from the Board's ultimate control over the policymaking function of the District." ECF No. 60 at 31. In turn, they argue, Tadlock cannot be held responsible for his role in the adoption and implementation of an unconstitutional policy against Jane. This argument lacks support in the case law and fundamentally misunderstands the nature of individual liability under 42 U.S.C. § 1983.

There is no requirement that someone have "official policymaking authority" to face liability under Section 1983. Rather, any government employee who acts under color of law to deprive someone of their constitutional rights can face Section 1983 liability for their own conduct. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). The undisputed facts clearly establish that Defendant Tadlock, as the EASD Superintendent, has been delegated authority by the Board to manage EASD and implement its policies, and that he was personally involved in developing EASD's policies and practices regarding transgender students' facility use (including EASD's Gender Support Protocols), and the implementation and enforcement of those policies and practices against Jane to exclude her from girls' facilities. ECF No. 58 at 2-4, 7, 11, 13-14. He is undoubtedly a key decision-maker with well-documented involvement in creating and administering the EASD's policies and practices for transgender students.

In short, Tadlock is individually liable because his direct involvement was a contributing cause to the constitutional violation. It is undisputed that Tadlock developed and implemented administrative guidance documents regarding gender support plans prior to the Board's involvement, and that it was part of his role to understand legal protections for transgender students. ECF No. 58 at 4, 7, 11. Despite his awareness of these legal protections, he reached a consensus with the Board that Jane's request to use the girls' facilities should be rejected, was directly involved in the amendments to the administrative guidance that weakened EASD protections for transgender students, and enforced the decision to deny Jane's use of and access to girls' facilities. *Id.* at 4, 12, 13. Unquestionably, Tadlock was directly and personally involved in depriving Jane of her right, as a transgender girl, to use girls' facilities at school.

No matter that Tadlock now claims that he was only following orders from the school board. *See Dugas v. Jefferson Cnty.*, 931 F. Supp. 1315, 1319-20 (E.D. Tex. 1996) (individual jail employee is individually liable under Section 1983 for his conduct despite fact that he "merely followed official policy"). Even if true, "there is no 'just following orders' defense" that would absolve him of liability for his personal participation in depriving Jane of her constitutional rights. *Kyle v. Holinka*, No. 09-cv-90, 2009 U.S. Dist. LEXIS 54574, at *6 (W.D. Wis. June 26, 2009); *see also Ritchie v. Coldwater Cmty. Schs*, 947 F. Supp. 2d 791, 820-21 (W.D. Mich. 2013); *O'Rourke v. Hayes*, 378 F.3d 1201, 1210, n.5 (11th Cir. 2004) ("[S]ince World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence, and officers in such cases may be held liable under § 1983 if there is a reason why any of them should question the validity of that order.") (citation and punctuation omitted). In denying Jane access to girls' restrooms, even after her parents' request, Tadlock acted in intentional and reckless disregard for Jane's established rights as a transgender student.

Thus, summary judgment should be granted as to Tadlock's liability for the equal protection violation due to his personal involvement in the deprivation of Jane's rights. Alternatively, at the very least, summary judgment cannot be granted in Defendants' favor, because genuine disputes of material fact exist as to Tadlock's participation in the policymaking process, such that a factfinder could reasonably conclude that Tadlock was at least in part responsible for the decision made to deny Jane access to the girls' facilities.

###

For the reasons stated in Plaintiff's opening brief and herein, this Court should grant partial summary judgment on Defendants' liability. As there is no basis in law for this Court to grant summary judgment in favor of Defendants as a matter of law, the Court should deny Defendants' request to do so. Although the parties have stipulated to all material facts, if the Court believes further evidence is needed to rule on the liability questions presented in Plaintiff's motion, Plaintiff respectfully submits that any such evidentiary issues would be appropriately considered at trial along with Plaintiff's claims for damages.

## II. THERE IS NO VALID LEGAL OR FACTUAL BASIS TO VACATE THE PRELIMINARY INJUNCTION, WHICH WOULD ONLY SUBJECT PLAINTIFF TO IRREPARABLE HARM.

Defendants' Motion to Vacate, ECF No. 61, asks this Court to dissolve the preliminary injunction entered on August 1, 2024, which has enabled Plaintiff Jane Doe to use girls' restrooms at school for the last seven months without issue. The Motion to Vacate is based solely on the same faulty premise underlying Defendants' opposition to Plaintiff's summary judgment motion for summary judgment; namely, that because of President Trump's Executive Orders, "the law has changed" and rendered the Seventh Circuit's controlling decisions in *Whitaker* and *Martinsville* meaningless. ECF No. 61 at 1-8. For the same reasons argued above, this argument has no grounding in law, *see supra* § I.A., and no more justifies vacating the preliminary injunction than

it does denying Plaintiff's motion for partial summary judgment. Even if President Trump could unilaterally amend Title IX—which he cannot and has not done—the injunction can stand based on Jane's likelihood of success on her Equal Protection Clause claims.

The Court should deny the Motion to Vacate and leave the preliminary injunction in place until a final decision on the merits of Plaintiff's claims.

### A. The Court need not, and should not, decide the Motion to Vacate before ruling on Plaintiffs' motion for partial summary judgment.

In the interest of judicial efficiency, the Court should defer any decision on Defendants' Motion to Vacate until after Plaintiffs' Motion for Partial Summary Judgment is resolved. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.") "Instead of devoting resources to refining [a preliminary injunction order], a district judge is entitled to spend available time figuring out whether permanent relief is justified," particularly when there "are no apparent costs to waiting." *Commodity Futures Trading Comm'n v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015). Because the entire premise of the Motion to Vacate will necessarily be decided through the resolution of the liability questions presented in Plaintiff's summary judgment motion, and no evidence has been presented that Defendants will "suffer[] from delay," there is no need to "postpone[] the final decision" on the merits to reevaluate the bases for interim relief. *Id.*; *see also Eppley v. Iacovelli*, No. 1:09-cv-386, 2010 U.S. Dist. LEXIS 85151, at *1 (S.D. Ind. Aug. 17, 2010) (a motion to modify a preliminary injunction "does not force the trial judge to permit relitigation of his original determination that the injunction should issue") (citation and quotation marks omitted).

**B.** **In evaluating the Motion to Vacate, the Court should weigh the same factors it did when granting the preliminary injunction.**

To determine whether a preliminary injunction should be dissolved, a district court must consider the same standard under which it was granted. *See Centurion Reinsurance Co. v. Singer*, 810 F.2d 140, 143 (7th Cir. 1987). In other words, the court must consider each of the preliminary injunction factors—plaintiff's likelihood of success on the merits, whether plaintiff will suffer irreparable harm with no adequate remedy at law without an injunction, whether the balance of harms tips in plaintiff's favor, and whether the injunction is in the public interest—warrant a dissolution of the injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018); Prelim. Inj. Order, ECF No. 50, at 22-23. The district court must consider whether "the expected cost of dissolving the injunction—considering the probability that dissolution would be erroneous because the plaintiff really is entitled to injunctive relief, and the consequences of such an error –[is] greater or less than the expected cost of not dissolving the injunction?" *Centurion*, 810 F.2d at 143. "If greater, the injunction should not be dissolved; if less, it should be." *Id.* (citing *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 593-94 (7th Cir. 1986)).

Because (1) Plaintiff's likelihood of success on both her Title IX and Equal Protection Clause claims remains strong; (2) a dissolution of the preliminary injunction would resubject Jane to the irreparable harms that have been prevented by the preliminary injunction this school year; (3) that, based on the full record that establishes that Jane has used girls' restrooms for many months with no issue, Defendants have faced no irreparable harm; and (4) that an injunction requiring a public school district to comply with its federal civil rights obligations remains in the public interest, there is no basis for this Court to vacate the injunction now.

### *1. Jane's Likelihood of Success on the Merits Has Not Changed*

In its Preliminary Injunction Decision, the Court held that "Plaintiff has shown a high likelihood of success on both her Title IX and Equal Protection Clause claims" based on the Seventh Circuit's decisions in *Whitaker* and *Martinsville*, and the "materially indistinguishable" facts presented here and in those cases. ECF No. 50 at 23, 28, 31, 35, 41. Now, on a full record, the material facts remain indistinguishable from those in *Whitaker* and *Martinsville*. *See generally* ECF No. 58. The governing law, too, remains unchanged. *See supra* § I.A. Defendants' only contrary argument is that the Executive Orders have "changed" the law and somehow abrogated Seventh Circuit precedent. ECF No. 61 at 2. Because "Defendants incorporate by reference in their entirety the arguments set forth in their Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment," *id.* at 1 n.1, and otherwise repeated those arguments verbatim in their Motion to Vacate, those arguments fail for the same reasons explained above, *see supra* § I.A.

Even if Jane's likelihood of success under Title IX decreased because of the Executive Orders, which it has not, her likelihood of success on her Equal Protection Clause claim would independently warrant keeping the preliminary injunction in place. Defendants' argument to the contrary makes little sense. Where there is a conflict between the Constitution and a federal statute, regulation, or directive, the Constitution takes precedence. *See Biondo v. City of Chicago*, 382 F.3d 680, 684 (7th Cir. 2004). In *Biondo*, the Seventh Circuit rejected the City of Chicago's defense that compliance with federal EEOC regulations mandating the use of race in certain employment practices was a compelling interest justifying what might otherwise be an unconstitutional use of race. *Id.* Judge Easterbrook observed that, if Chicago was correct, "[t]hen Congress or any federal agency could direct employers to adopt racial quotas, and the direction would be self-justifying: the need to comply with the law (or regulation) would be the compelling interest," concluding that "[s]uch a circular process would drain the equal protection clause of meaning." *Id.*

Under the Seventh Circuit's decisions in *Whitaker* and *Martinsville*, there is no conflict between Title IX and the Equal Protection Clause. Defendants' argument that the Executive Orders have introduced a conflict is, as argued above, wrong. *See supra* § I.A.1. This Court correctly found, under current precedent, that Jane is likely to succeed on her equal protection claim against EASD. ECF No. 50 at 41. That is still true now and, regardless of the disposition of her Title IX claim, is an independent basis for leaving the injunction in place. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008) (noting that a plaintiff need only establish the requisite likelihood of success on at least one claim).

### 2. Jane will suffer needless irreparable harm if the preliminary injunction is vacated and she is banned from using girls' restrooms again.

In its Preliminary Injunction decision, the Court found that the "plethora of evidence" in the preliminary record, including declarations from Jane, her father, her therapist, and Plaintiff's expert witness, Dr. Stephanie Budge, "are more than sufficient to demonstrate that Plaintiff will continue to suffer irreparable harm absent a preliminary injunction and that a remedy at law will be seriously deficient given the nature of the 'prospective harm' as Plaintiff prepares to begin her eighth-grade school year." ECF No. 50 at 42-43.

The full record now only solidifies the harms that Jane had suffered and, absent a preliminary injunction, would have continued to suffer from being banned from girls' restrooms. None of the material facts in the preliminary record cited in the Preliminary Injunction Decision are in dispute; the stipulated agreed facts only confirm them. *See generally* ECF No. 58. Moreover, the record establishes that the preliminary injunction has, in fact, been effective in preventing the irreparable harms to Jane's education, health, and well-being. *See id.* at 15-16. As stipulated by the Parties, Jane's use of girls' restrooms "has been uneventful," "[her] symptoms of anxiety, depression, and gender dysphoria have decreased, and her grades, attendance, and participation in

school activities have increased significantly this year," and "[s]he has reported that being permitted to use the girls' restroom has allowed for her to have a more positive experience at school." *Id.*

Defendants fail to address, let alone grapple with, the near certainty that the progress Jane has made this year would be undermined, if not erased, if the injunction is lifted and she is forced out of girls' restrooms. Because the record establishes the irreparable harm that Jane would face without an injunction, and Defendants have not offered any evidence to rebut that harm, there is no reason to disrupt the Court's previous finding that Jane would suffer irreparable harm without an adequate remedy at law.

> 3. *Defendants have suffered no harm from the injunction and face no harm from Jane's continued use of girls' restrooms moving forward.*

As Defendants have stipulated, there have been no issues with Jane's use of girls' restrooms since the preliminary injunction issued:

> Jane's use of girls' restrooms at EAMS this year has been uneventful. Since the beginning of this school year, school administrators have not received any complaints about Jane's use of girls' restrooms. No student or parent has complained that Jane has engaged in any inappropriate behavior when using the restroom, and there have been no other incidents or problems associated with her restroom use.

ECF No. 58 at 16.

Defendants have also stipulated that, "[a]fter the preliminary injunction . . . was granted, EASD installed privacy strips in girls' restrooms to close any gaps between stalls and their doors and enhance all students' privacy when using those stalls," *id.* at 3, and that all students have access to single-occupancy restrooms, *id.*, minimizing the concerns Defendants asserted in opposing the preliminary injunction last year. Defendants have not argued, nor have they offered any evidence, that Jane's continued use of girls' restrooms would impose any hardships.

Defendants argue that EASD's "expos[ure] . . . to enforcement actions by the federal government, including the risk of losing its federal funding," justifies a dissolution of the preliminary injunction, asserting that "the Court cannot perpetuate a preliminary injunction that violates Title IX and forces the District to act in a manner that is contrary to the Executive Order." ECF No. 61 at 8-9. Defendants have it backwards. The federal government cannot force EASD to ignore a valid injunction issued under controlling case law. *See generally supra* 5-6. And, again, EASD would violate Title IX, as it has been interpreted by controlling case law in this circuit, by denying Jane access to girls' restrooms because she is transgender. The mere speculation that the federal government might someday institute an enforcement action against EASD for complying with a lawful injunction is not a sufficient basis to set aside the preliminary injunction.

### 4. The balance of equities remains solidly in Plaintiff's favor.

At the preliminary injunction stage, this Court "ha[d] little difficulty concluding that balancing the equities as to all parties and the public weighs in favor of Plaintiff." ECF No. 50 at 45. In reaching this conclusion, the Court considered the privacy interests asserted by Defendants and the amicus Coalition, but concluded that those concerns did not tip the scales in Defendants' favor. *Id.* As noted above, Defendants have stipulated that Jane's restroom use caused no problems for her or other students. *See supra* 24. The Coalition's newly submitted declarations, which largely echo the declarations it filed last year by expressing generalized concerns by male and female students, most of whom are not current EAMS students and have not had occasion to interact with Plaintiff, should not alter the analysis now.

### ###

For these reasons, the factors supporting this Court's entry of the preliminary injunction last August remain in force now. Vacating the injunction now would only subject Jane to the risk of irreparable harm with no countervailing benefit to Defendants.

## CONCLUSION

Plaintiff Jane Doe is entitled to partial summary judgment on EASD's liability under Title IX and the Equal Protection Clause, and Defendant Jason Tadlock's individual liability under Section 1983 for his role in depriving Jane of her constitutional rights. Because Defendants' arguments that President Trump's recent executive orders "changed" the law and supersede controlling Seventh Circuit case law have no merit, this Court should deny Defendants' request that this Court grant summary judgment in their favor. The Court should also deny Defendants' motion to vacate the preliminary injunction in this case. The injunction has effectively prevented Jane from suffering irreparable harm, at no cost to Defendants, and there is no legal or factual basis to dissolve it now. If the Court grants Plaintiff's motion, Plaintiff respectfully requests that the Court set a jury trial for damages and supplemental briefing on appropriate remedies for Defendants' violations.

DATED: March 13, 2025                    Respectfully submitted,

/s/ Joseph J. Wardenski
Joseph J. Wardenski
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
Phone: (347) 913-3311
joe@wardenskilaw.com

Robert (Rock) Theine Pledl
Victoria Davis-Dávila
DAVIS & PLEDL, S.C.
1661 N. Water Street, Suite 410
Milwaukee, WI 53202
Phone: (414) 667-0390
rtp@davisandpledl.com
vldd@davisandpledl.com

*Counsel for Plaintiff*